UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT EEK,

    Plaintiff,

v.                                                                                  Case No. 1:15-cv-261
                                                                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born in 1964. PageID.221. He completed high school, had specialized training in welding, and previous employment as a welder/die setter and construction laborer. PageID.227. Plaintiff alleged a disability onset date of June 1, 2011. PageID.221. Plaintiff identified his disabling condition as a back injury. PageID.226. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 18, 2013. PageID.45-55. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C.

§405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she

2

>   is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2011 and that he meets the insured status requirements of the Act through June 30, 2016. PageID.47. At the second step, the ALJ found that plaintiff had severe impairments of: "disorder of the spine resulting in s/p lumbar spine L5-Sl microdiscectomy, low back pain and radiculopathy; s/p right knee surgeries, most recent occurring in 1/2013; adjustment disorder, mixed as well as anxiety and depressive disorders." *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.48.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following: occasionally balance, climb, stoop, crouch, crawl; stand and/or walk for 2 hours in an 8 hour workday and sit for 6 hours of an 8 hour workday; limited to performing simple, routine, repetitive tasks, an no work at fast paced production quotas.

PageID.49. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.53.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.54. Specifically, plaintiff could perform the following light, unskilled jobs in Michigan: product inspector (2,000 jobs); and office helper (4,500 jobs). *Id.* Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from June 1, 2011 (the alleged onset date) through September 18, 2013 (the date of the decision). PageID.54-55.

### III. ANALYSIS

Plaintiff did not set forth a Statement of Errors as directed by the Court. *See* Notice (docket no. 7).[1]  Upon reviewing plaintiff's brief, the Court gleans the following issue:

> **Whether the Commissioner erred as a matter of law in failing to assign controlling weight to plaintiff's treating physician, Nicholas Beechnau, D.O., as to his testimony regarding the plaintiff's residual functional capacities.**

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

---

[1] Plaintiff's counsel is advised that future briefs which fail to include a Statement of Errors will be stricken. In limiting the issue for review, the Court declines to address plaintiff's conclusory assertion that the ALJ erred with respect to evaluating the opinion of a non-examining physician, Dr. Brophy.

5

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Beechnau set forth his opinions in a sworn statement dated July 12, 2013. PageID.454-462. Plaintiff provides only a brief summary of Dr. Beechnau's opinions. PageID.454, 467.[2] The doctor's limitations referenced by plaintiff are (1) that he would be unable to withstand a 40 hour work week due to positional limitations, (2) that he would need unscheduled work breaks which would include the need to recline, and (3) that he would have absenteeism in excess of what would be allowed in a competitive work environment. PageID.467. The ALJ gave very little weight to the doctor's opinion, stating in pertinent part as follows:

> Atty. Hoopes asked Dr. Beechnau to submit to a sworn statement, and this document is now in file at exhibit 15F. Dr. Beechnau met with Atty. Hoopes July 12, 2013. The sworn statement refers to Dr. Beechnau as a second year resident, specializing in general practice or family practice at Fruitport Family Medicine (exhibit 15F). Dr. Beechnau was asked to comment on a December 19, 2012 MRI, and whether that document had any objective findings that would establish the cause of his pain. Dr. Beechnau stated that "you would have to speak to his neurosurgeon or radiologist to better clarify that." (Exhibit 15F, page 4). The course of this sworn statement then changes to Atty. Hoopes asking Dr. Beechnau a series of leading

---

[2] The Court notes that plaintiff refers to the statement as dated July 21, 2013. PageID.454, 467.

> questions, to which Dr. Beechnau replies in a manner that is very favorable to the claimant in this matter. However, the statement from Dr. Beechnau in regards to the primary question, as to whether the MRI would establish a cause of the claimant's pain, draws the rest of the sworn statement into serious doubt. Stated another way, Dr. Beechnau is asked to initially respond to whether this MRI is showing anything that would potentially generate the significant, unrelenting variety of pain this claimant is complaining of. Dr. Beechnau in effect defers to the radiologist who interpreted the MRI originally. Dr. Beechnau also essentially stated that the other party who could answer the question of whether the MRI would offer a source for the pain generation, and he refers to the neurosurgeon as on [sic] potential party.
>
> The undersigned finds that this sworn statement from Dr. Beechnau is due very little weight at all. The first reason that this document is due very little weight is of course the fact that Dr. Beechnau was unable to opine what the identity of the pain would be. He defers to the neurosurgeon, and then to the radiologist and he is unable to offer a valid cause and effect type of explanation that would detail whether the MRI, or the findings therein, are the cause of the pain. Moreover, Dr. Beechnau has deferred to another source, and there is actually one such source available who does not report these severe, ongoing restrictions that Dr. Beechnau has listed in response to Atty. Hoopes leading questions.

PageID.50-51.

The ALJ noted that another treating physician, Christopher Marquart, M.D., expressed an opinion on the significance of the MRI. PageID.51. According to Dr. Marquart, the MRI "doesn't show any evidence of recurrent disc or significant nerve root compression." PageID.438. Dr. Marquart did note that plaintiff "had some epidural fibrosis enhancement around the area of his previous surgery." *Id.* The ALJ found Dr. Marquart's opinion significant:

> Specifically, Dr. Marquart has explained the presence of the MRI results, and he also refers to fibrosis. Dr. Marquart never confirmed that the MRI results or the fibrosis are a pain generator. Dr. Marquart also offers an opinion that diverges materially from Dr. Beechnau. Dr. Marquart conducted a neurological examination and he mentions that the results are within normal limits. This effectively means that the MRI and the fibrosis are not proven as pain generators, or as a source for the type of unrelenting and protracted pain this individual is alleging. Dr. Marquart has not offered an explanation as to what the clear pain generator is in this case, and that means that there is a gap in the medical evidence of record. This gap is of paramount importance in this case as Dr. Beechnau could not offer an opinion as to what the

pain generator was, and the claimant's primary contention is that pain and the side-effects from constant pain are the cause of his inability to work.

At exhibit 12F, Dr. Marquart opined that the claimant needs to get his right knee fixed, and he further explains that the right knee issue has thrown off his back. This issue is construed to mean that the right knee degenerative joint issue is contributing to some of his back complaints and back related pain, as the right knee interacts with the back in an adverse manner. Dr. Marquart has stated that the back will possibly improve once the right knee was fixed. Dr. Marquart noted that MRI, which is the one that Dr. Beechnau was unable to classify as a pain generator or source, is not determinative. The MRI is not abnormal per Dr. Marquart and he then went on to perform a neurological evaluation that is also normal. Dr. Marquart does not say that the fibrosis is a source of pain per the MRI.

PageID.51.

The ALJ also noted that it was Dr. Marquart who ordered the MRI studies and that Dr. Beechnau deferred to him with respect to treating plaintiff's back pain:

At exhibit 15F, Dr. Beechnau was unable to determine if the 12/19/2012 MRI report results were the source of the pain complaints that this claimant alleged. Atty. Hoopes still proceeded to ask a series of questions, and the result was that the claimant was found to have significant restrictions. Dr. Beechnau had earlier noted that the chronic back pain was something that Dr. Marquart should deal with, as when he met with the claimant 8/3/2012 and wrote in the clinical summary that "Dr. Marquart is in charge of his back issues["] (exhibit 8F, page 5). This is relevant as it again reiterates the degree of deference that Dr. Beechnau has given to Dr. Marquart, thus further rendering the sworn statement as less persuasive.

PageID.52.

Based on this record, the ALJ gave good reasons for assigning very little weight to Dr. Beechnau's opinion. Accordingly, this claim of error is denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 25, 2016              /s/ Ray Kent
                                   RAY KENT
                                   United States Magistrate Judge